824 So.2d 278 (2002)
Jayne LANDOW, Appellant,
v.
Stuart LANDOW, Appellee.
No. 4D01-3598.
District Court of Appeal of Florida, Fourth District.
August 21, 2002.
Randy D. Ellison, West Palm Beach, for appellant.
Steven Cripps of Law Offices of Orsley & Cripps, P.A., West Palm Beach, for appellee.
POLEN, C.J.
The former Jayne Landow timely appeals a final judgment for the dissolution of her marriage to Stuart Landow, alleging errors in the trial court's denial of her claim for alimony, its equitable distribution, and its denial of her prayer for attorney's fees. We affirm on all points.
Jayne and Stuart were married on November 11, 1995. It was the third marriage for Jayne, the fourth for Stuart. No children were born of the marriage. Jayne filed a petition for dissolution on April 4, 2000, seeking inter alia the equitable distribution of the marital assets, alimony (both temporary and permanent), and recovery of her attorney's fees. Stuart subsequently filed a counterpetition and the matter proceeded to trial in June/July of 2001. At the time of trial Stuart was 55 years old; Jayne was 50.
Jayne had married a successful business man; Stuart had served as CEO of Top Source Inc., earning a six-figure salary. By the time of trial, such was not the case. Stuart was ousted from Top Source in July of 1998, triggering a "golden parachute" in the amount of $30,000 per month for the next thirty (30) months. All but the final two payments had been received by the time of trial. Nor did Stuart regain gainful employment after his dismissal from Top Source. Though he was loosely involved with a technology company, Convolve, *279 owned by a business acquaintance from his days at Top Source, and in fact accompanied its owner on a number of business trips, he had no position, no contract of employment, and at no time did he receive compensation in any form. His only financial "gain," post-Top Source, occurred when he inherited approximately $100,000 from his mother's estate. On the other side of the balance sheet, a $3,000,000 Canadian judgment had been entered against him, he owed the IRS approximately $750,000, and his retirement funds were steadily dwindling away.
Jayne owned a self-professed "little design company," Designs by Jayne, which she had carried over from her previous marriage. Though the parties offered disparate testimony regarding the extent of her business, Jayne continued to do some work through Designs by Jayne during the life of the marriage. Whereas Stuart testified Jayne had always had clients during the marriage, Jayne claimed she had worked sporadically, serving approximately five clients during that time. Jayne alleged she could not support herself and requested rehabilitative alimony in the amount of $6,000 a month for six (6) years, plus a lump-sum payment of $25,000, to get her business off the ground, plus an equitable "equalizer payment" of $6,000 a month.
Jayne's prayer for alimony was wholly rejected by the trial court. We find no error. As courts of this state have long recognized, the sine qua non of alimony awards is the relative need and ability of the parties. See § 61.08(2)(d), Fla. Stat. (2001). Though Jayne's forensic accounting expert testified Stuart had wasted over $1,000,000 during the course of the marriage, Stuart's expert testified no wasting of assets had occurred. The trial court found no marital waste had been established, a finding we do not disturb on appeal.
Clearly Jayne was not entitled to permanent alimony in connection with the dissolution of this short term-marriage. Nor did Jayne present a definite rehabilitative plan which the court found was (1) "reasonable and necessary" or (2) that Stuart could afford. See also Kalmanson v. Kalmanson, 796 So.2d 1249 (Fla. 5th DCA 2001)(to establish entitlement to rehabilitative alimony, the spouse must present evidence establishing the rehabilitative plan, the objective of the rehabilitation, the areas in which rehabilitation was desired, and the actual amount of rehabilitative alimony necessary). Further supporting the denial of rehabilitative alimony[1], we note Jayne's business, Designs by Jayne, did not "suffer" as a result of marriage. See Sochia v. Sochia, 573 So.2d 388 (Fla. 4th DCA 1991).
As the trial court observed in its outright denial of Jayne's prayer for alimony, "She will leave the marriage with more than she started and is not in need of alimony." We find no abuse of discretion[2] *280 in this holding, where the record reflects Jayne left the marriage with substantial assets, including a $730,000 home (subject to a $96,000 mortgage), a variety of forms of transportation (automobile, motorcycle, boat, waverunner), and a one-half interest in all of Stuart's business interests.
We further hold the trial court did not abuse its discretion in failing to award Jayne an equitable share in Stuart's "interest" in Convolve. The trial court found, and the record supports, Stuart had no interest in Convolve which could be divided. There was no contractual agreement, either oral or written, which provided Stuart was, or would be, entitled to compensation as a result of his association with Convolve, nor did he own any legal interest in the company. Simply, there was nothing to divide.
We find no abuse of discretion in the trial court's denial of Jayne's prayer for attorney fees, given the parties aforementioned relative financial situations. See Rosen v. Rosen, 696 So.2d 697 (Fla.1997); Kovar v. Kovar, 648 So.2d 177 (Fla. 4th DCA 1994); § 61.16, Fla. Stat. (2001).
AFFIRMED.
STONE, J., and DAVIDSON, LISA, Associate Judge, concur.
NOTES
[1] We note Jayne shifted gears from her trial position in her appellate brief, now claiming she should have been awarded "bridge the gap" temporary alimony below. Not only was this argument not advanced below, we find the denial of such would not constitute error, especially given Stuart's inability to provide Jayne with additional income to "cushion the blow" as she adjusts to single life. See Murray v. Murray, 374 So.2d 622 (Fla. 4th DCA 1979)("bridge the gap" award may be justified after short-term marriage to allow a spouse to bridge the gap between the high standard of living enjoyed during the brief marriage and the more modest standard of single life).
[2] We are mindful of our colleague's concurrence in Bacon v. Bacon, 819 So.2d 950 (Fla. 4th DCA 2002)(Farmer, J., concurring), where he argues the broad discretion customarily afforded to trial judges in alimony determinations may not be the best policy, and perhaps statutory guidelines should be established, somewhat akin to those used in child support cases, at least where a permanent alimony award (in some amount) is appropriate. Notwithstanding, we find Judge Farmer's analysis has no affect on the instant case, where the outright denial of all alimony, both permanent and temporary, was not in error.